2023 IL App (1st) 220938

SECOND DIVISION
September 29, 2023

No. 1-22-0938

_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF ALBERT KAZOROW, Deceased. | ) | |
| | ) | Appeal from |
| _____ | ) | the Circuit Court |
| | ) | of Cook County |
| JACQUELINE BURDI and NICOLE McCURDY, as | ) | |
| Successor Trustee of the Kristen Pearson Trust, | ) | 2017-P-006063, |
| | ) | 2019-L-12197 |
| Plaintiffs-Appellants, | ) | (cons.) |
| | ) | |
| v. | ) | Honorable |
| | ) | Daniel O. Tiernan, |
| JUDITH McCURDY, | ) | Judge Presiding |
| | ) | |
| Defendant-Appellee. | ) | |

_____

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Howse and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs contend their claims of tortious interference with inheritance expectancy are subject to the five-year statute of limitations for tort claims (see 735 ILCS 5/13-205 (West 2016)) and were wrongfully dismissed when the circuit court instead applied the six-month statute of limitations for filing a will contest pursuant to section 8-1 of the Probate Act of 1975 (Act) (755 ILCS 5/8-1(a) (West 2016)), as well as *Robinson v. First State Bank of Monticello*, 97 Ill. 2d 174 (1983), and *In re Estate of Ellis*, 236 Ill. 2d 45 (2009), in which the supreme court discussed the public policy underlying that statute.

¶ 2    The estate at issue is Albert Kazorow's. Kazorow, a Chicagoan, was predeceased by his wife, Yolanda, in 2011, and then died at the age of 87 in 2017. His survivors included his daughters, Jacqueline and Judith, and granddaughters, Kristen and Nicole.

¶ 3    Kazorow's will was admitted to probate on October 6, 2017, and letters of office were issued to Judith as executor that same day. On April 6, 2018, the three other survivors, Jacqueline, Kristen, and Nicole, filed a petition in the probate division contesting the validity of the will and a trust bearing Judith's name. During the proceedings, Kristen died, Nicole abandoned her own claims, and Nicole began representing the interests of Kristen's trust. Thus, the plaintiff-appellants are Kazorow's daughter, Jacqueline, and the trust of Kazorow's granddaughter Kristen, which is represented by his granddaughter, Nicole as successor trustee, and which we will refer to by Kristen's name. The defendant-appellee is Kazorow's daughter, Judith. The fifth amended petition contesting the will and trust is pending in the probate division and is not part of this appeal.

¶ 4    The claims on appeal were first filed in the law division on November 4, 2019—well after the will contest was filed in the probate division—when Jacqueline and Kristen sued Judith for tortious interference with inheritance expectancy as well as common law fraud and defamation. A person who by fraud, duress, or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received may be found liable to the other for loss of the inheritance or gift. *Ellis*, 236 Ill. 2d at 52. A tort claim for intentional interference with inheritance expectancy is a personal action that is directed at an individual tortfeasor and seeks a judgment for the amount of the benefit they tortiously acquired, a constructive trust, or an equitable lien. *Ellis*, 236 Ill. 2d at 52. The tort action differs from a will contest. *DeHart v. DeHart*, 2013 IL 114137, ¶ 39. A will contest is a *quasi in rem* proceeding

against the will itself and seeks to set aside the will as invalid. *Ellis*, 236 Ill. 2d at 51. "The single issue in a will contest is whether the writing produced is the will of the testator." *Ellis*, 236 Ill. 2d at 51. Grounds for invalidating the will may include undue influence, incapacity, fraud, or revocation. *Ellis*, 236 Ill. 2d at 51. In their complaint at law, Jacqueline and Kristen alleged that documents they obtained through discovery in the probate action indicated that while Kazorow was alive, Judith depleted his estate by fraudulently causing some of his funds and other assets to be transferred to her. They filed a first amended complaint, which was transferred to the probate division and consolidated with their will contest. Then they filed a second amended complaint in the probate division, which was dismissed on Judith's motion. This is the ruling at issue on appeal. Only the dismissal of their two tortious interference counts (counts I and II) are contested on appeal.

¶ 5     Judith moved to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure, which allows a party to file a motion combining a section 2-615 motion to dismiss with a section 2-619 motion to dismiss. 735 ILCS 5/2-619.1 (West 2018). A section 2-615 argument concerns the legal sufficiency of a complaint. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. A section 2-619 argument admits the sufficiency of a complaint, but asserts affirmative matter that defeats the claim. *Bjork*, 2013 IL 114044, ¶ 21. One of the affirmative matters that is enumerated in section 2-619 is that "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). The circuit court granted Judith's motion to dismiss the tortious interference counts on this basis.

¶ 6     Section 8-1 of the Act states :

"(a) Within 6 months after the admission to probate of a domestic will ***, any

interested person may file a petition in the proceeding for the administration of the testator's estate or, if no proceeding is pending, in the court in which the will was admitted to probate, to contest the validity of the will." 755 ILCS 5/8-1(a) (West 2016).

¶ 7 In contrast, the statute generally governing tort claims states:

"[A]ctions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205 (West 2016).

¶ 8 In the dismissal order, the court specified:

"2) [The claims of] Tortious Interference were not brought timely within six months of the admission to probate of the Will of Albert Kazorow,

3) The original Complaint in Case No 2019 L 12197 was not filed until November 4, 2019, which was more than six months after the Probate Division admitted the Will of Albert Kazorow to probate,

4) Plaintiffs had plead *(sic)* tortious interference in Case No 2017 P 006063, but chose to abandon the claim in subsequent petitions,

5) Plaintiffs' prior pleadings in Case No 2017 P 006063 show Plaintiffs were aware of and had the opportunity to file a Tortious interference claim within the 755 ILCS 5/8-1(a) six month limitations period [for will contests],

6) Applying the holdings and public policy in *In re Estate of Ellis*, 236 Ill. 2d 45 (2009) and *Robinson v. First State Bank of Monticello*, 97 Ill. 2d 174 (1983), Plaintiffs are not

entitled to toll the limitations period for filing their actions alleging tortious interference with inheritance expectancy[.]"

¶ 9    Thus, the question on appeal is the timeliness of the claims.

¶ 10    We review *de novo* a dismissal pursuant to section 2-619 of the Code of Civil Procedure. *Bjork*, 2013 IL 114044, ¶ 21. A section 2-619 motion admits as true all well-pled facts, as well as all reasonable inferences that may arise therefrom. *Bjork*, 2013 IL 114044, ¶ 21. When ruling on a section 2-619 motion, a court must interpret all pleadings and supporting documents in favor of the nonmoving party. *Bjork*, 2013 IL 114044, ¶ 21.

¶ 11    The record does not support the circuit court's finding that Jacqueline and Kristen's "prior pleadings" in the probate division show that they were aware of and had an opportunity to file a tortious interference claim within section 8-1 of the Act's time limitation. First, the prior pleading the circuit court analyzed was the first amended probate petition, which was filed on May 18, 2018. By our calculations, this was six months *and six weeks* after the will was admitted to probate. Second, and more importantly, the intentional interference claim in the first amended probate petition and the intentional interference claim in the second amended complaint at law were based on different events. The first amended probate petition's intentional interference claim contrasted Kazorow's 2011 estate planning documents, which made a relatively minor bequest to Judith but largely benefitted Jacqueline and Kristen, and Kazorow's 2012 estate planning documents, which instead entirely benefitted Judith. (The plaintiffs did not include this claim in their second amended, third amended, and fourth amended probate petitions.) The complaint at law, however, was not based on changes to Kazorow's will and trust, it was based on *inter vivos* transfers from Kazorow to Judith when his assets exceeded $4 million. For these two reasons, the record does not

bear out that Jacqueline and Kristen "were aware of and had the opportunity to file" the tortious interference claim at issue within section 8-1 of the Act's six-month time constraint. In fact, the record lacks any indication that Jacqueline and Kristen knew or should have known of the *inter vivos* transfers that they allege were the product of Judith's coercion and fraud.

¶ 12    Jacqueline and Kristen argue that the cases the court relied upon, *Robinson*, 97 Ill. 2d 174, and *Ellis*, 236 Ill. 2d 45, are distinguishable because those plaintiffs did not file will contests within section 8-1 of the Act's six-month limitations period but subsequently filed tort claims that required the courts to determine whether they could proceed. The difference here is that Jacqueline and Kristen timely filed a will contest that is still pending and then added the tort claims at issue, which are based on newly discovered information and which would not be addressed in their original action. Jacqueline and Kristen contend that the analysis underlying *Robinson* and *Ellis* is not applicable to their dismissed claims. Judith responds that *Robinson*, *Ellis*, and *Bjork* indicate that the determinative fact in what limitations period should apply to tortious interference claims is whether the claims seek or require setting aside the testator's will and that Jacqueline and Kristen's tort claims are dependent upon invalidating Kazorow's last estate plan in order to reinstate the prior version under which they had an expectancy interest. We are persuaded by Jacqueline and Kristen's argument.

¶ 13    After the *Robinson* will was admitted to probate, heirs at law who did not benefit from the will entered into a $125,000 settlement agreement with the will's beneficiaries and released them from any and all claims and causes of action arising from any will, codicil, or undertaking by the parties. *Robinson*, 97 Ill. 2d at 177. "[I]f no direct proceeding is brought to contest the will within the [6-month] statutorily prescribed time period, [then] the validity of the will is established for all

purposes." *Robinson*, 97 Ill. 2d at 182-83. Thirty months after the will was filed and 24 months after it had become valid under the Act, the individuals who had chosen to settle filed a tort suit that did not directly challenge the will or seek damages from the estate. *Robinson*, 97 Ill. 2d at 181. However, the supreme court reasoned that their suit was effectively a late will contest because it would require the circuit court to determine that the settled will was invalid. *Robinson*, 97 Ill. 2d at 182. It would have been against sound public policy to permit the plaintiffs to bring a collateral attack on the order admitting the will to probate. *Robinson*, 97 Ill. 2d at 186. The supreme court emphasized that the public policy which underlies section 8-1 is " 'the pressing importance of securing an orderly settlement of estates, to prevent embarrassment to creditors and others, and to avoid as much confusion as possible in the vast amount of property rights and titles that pass through probate.' " *Robinson*, 97 Ill. 2d at 185 (quoting *Pedersen v. Dempsey*, 341 Ill. App. 141, 143 (1950)). Allowing the plaintiffs to affirmatively decide not to contest the will, enter into a settlement agreement, let the six-month period expire, and yet then bring their suit "would be giving them a second bite of the apple and defeating the purpose of *** section 8-1." *Robinson*, 97 Ill. 2d at 185. The supreme court "refuse[d] to have section 8-1 circumvented by allowing the plaintiffs in this case to maintain a tort action which in its practical effect would invalidate a will that has become valid under the Probate Act." *Robinson*, 97 Ill. 2d at 186. Allowing the plaintiffs to maintain their tort action "would permit the issue of undue influence, which would have been grounds for a will contest, to be litigated years after the will was admitted to probate and immune from contest on this issue." *Robinson*, 97 Ill. 2d at 186; see also *In re Estate of Roeseler*, 287 Ill. App. 3d 1003, 1021 (1997) ("If a will contest is available and would provide an adequate remedy to the petitioner, no tort action will lie."); *In re Estate of Hoover*, 160 Ill. App. 3d 964, 966 (1987)

(an action for the tort of intentional interference with an expectancy cannot be sustained where the remedy of a will contest is available and would provide the injured party with adequate relief).

¶ 14    *Robinson*'s public policy concerns are not implicated in the present case where the plaintiffs filed a will contest within section 8-1 of the Act's time limit and are awaiting resolution of that claim. The second amended complaint at law includes allegations that Judith interfered with her father's estate plan but also indicates that she engaged in "profligate spending and unlawful *inter vivos* transfers" from her father's assets and also delayed in disclosing his death in order to give herself "time to further loot [his] estate and transfer all [his] estate assets into her name." Jacqueline and Kristen allege that the "Will Contest in Cause No. 2017 P 006003 alone will not fully compensate" them and seek compensatory and punitive damages for Judith's intentional interference with her father's estate plan and assets. The allegations of unauthorized *inter vivos* transfers and depletion of the estate would not be relevant to or remediated in the pending will contest.

¶ 15    The policy interests expressed in *Robinson* are not present here because by filing a will contest prior to filing their tort claims, Jacqueline and Kristen did not "circumvent[ ]" section 8-1 by bringing a collateral attack on a "valid[ated]" will. *Robinson*, 97 Ill. 2d at 186. Their will challenge is *pending* and is a direct attack on whether the 2012 will is actually Kazorow's. Their tort claims are based on documents they obtained through discovery in the will contest, and *Robinson* does not suggest that they should be prevented from supplementing that pending action with tort claims after the expiration of the limitations period for the will contest itself. Furthermore, Kazorow's disputed will is not a "validated" will because it has not progressed through the process of the will challenge.

¶ 16    *Ellis* is another instance in which a will contest was not filed within the six-month limitations period. *Ellis*, 236 Ill. 2d 45. The plaintiff would have benefitted significantly from an earlier version of the decedent's will but was unaware of that bequest until more than two years after a different will was admitted to probate. *Ellis*, 236 Ill. 2d at 48. The plaintiff alleged that the newer will was procured through the defendant sole beneficiary's undue influence, fraud, and tortious interference with the plaintiff's expectancy, but the circuit court dismissed the action as time-barred by section 8-1. *Ellis*, 236 Ill. 2d at 47. The plaintiff appealed only the dismissal of the latter claim. *Ellis*, 236 Ill. 2d at 47. Distinguishing the circumstances from *Robinson*, the supreme court observed that the plaintiff did not have "a fair opportunity to pursue a remedy in probate because it was not aware of its expectancy under the earlier will, nor was it aware of [the defendant's] allegedly fraudulent conduct, until after the [later] will was admitted to probate and the six-month deadline for a will contest had expired." *Ellis*, 236 Ill. 2d at 55-56. The supreme court reasoned that a will contest had never been " 'available' " to the plaintiff (*Ellis*, 236 Ill. 2d at 54) and, furthermore, a will contest would not have provided "sufficient relief" because it would not have extended to the defendant's alleged *inter vivos* depletion of the estate by more than $1 million (*Ellis*, 236 Ill. 2d at 56). The court held that section 8-1 did not apply to the tort claim (*Ellis*, 236 Ill. 2d at 56) and emphasized that its holding "does not extend to a plaintiff who fails to bring a tort claim within the period for filing a will contest, where the will contest remedy was available" (*Ellis*, 236 Ill. 2d at 57).

¶ 17    *Ellis* does not preclude the tort claims at issue. The *Ellis* plaintiff and the current plaintiffs differ because the current plaintiffs *were* pursuing their timely will challenge when they discovered the potential for another claim because financial documents they obtained suggested that the

defendant had been treating the testator's assets as if they were her own to spend and/or transfer out of his estate. However, the *Ellis* plaintiff and the current plaintiffs are alike because a will contest alone would not provide any of them "sufficient relief" because a will contest cannot reach the alleged *inter vivos* depletion of an estate. *Ellis*, 236 Ill. 2d at 56. *Ellis* is not rationale for applying section 8-1 to the current circumstances and holding that section 8-1 bars the tort claims that Jacqueline and Kristen filed after more than six months had lapsed.

¶ 18    *Bjork*, 2013 IL 114044, ¶ 31, provides additional support for Jacqueline and Kristen's appeal, where the supreme court determined that a tort claim could proceed, in part because a prior probate proceeding had not provided the plaintiff with an adequate remedy. Jacqueline and Kristen's tort claims seek relief that they could not obtain through a probate proceeding alone.

¶ 19    Furthermore, we disagree with Judith's contention that *Robinson*, *Ellis*, and *Bjork*, 2013 IL 114044, justify the dismissal of Jacqueline and Kristen's tort claims. Judith contends those cases indicate that the test of whether tort claims may be filed after the six-month mark "is whether the tort claims seek, or require, setting aside the testator's probated will." She argues that Jacqueline and Kristen's tort claims require first setting aside the 2012 estate planning documents before these plaintiffs receive their requested relief of a personal judgment against Judith for the disputed *inter vivos* transfers. Judith contends the cases indicate that the "claims are collateral attacks" on the admitted will.

¶ 20    Even if Judith's summation of *Robinson*, *Ellis*, and *Bjork* were correct, we point out that the 2012 will has not been probated, there is a pending will contest, and thus, Judith's reading of these three cases is not the prohibition that she hopes it is. Furthermore, it appears that the will contest and the tort claims could easily be decided together, because there is considerable overlap

in the two sets of allegations and thus evidence and argument necessary to adjudicate whether the will and *inter vivos* transfers were actually Kazorow's. The disputed revision to Kazorow's estate plan and challenged financial transactions occurred around the same time. That is, the disputed will is dated March 22, 2012, and in their tort pleading, Jacqueline and Kristen gave examples of Judith's "profligate spending [of Kazorow's funds] and unlawful *inter vivos* transfers," including a $5000 check to Judith on February 14, 2012, a $47,691.28 check to an automobile dealership on October 10, 2012, multiple checks totaling in excess of $34,000 to a builder for services for Judith's benefit in mid-to-late 2012, and a $2000 transfer to Judith on May 10, 2014.

¶ 21    Also, in *In re Estate of Jeziorski*, 162 Ill. App. 3d 1057, 1062-64 (1987), with regard to a will contest that was jointly pled with a claim for tortious interference with expected inheritance and sought to set aside certain *inter vivos* transfers, the appellate court endorsed hearing the claims together:

> "We recognize Illinois' long-standing policy favoring the orderly administration of estates. [Citation.] We further recognize the purpose of legislatures in passing probate acts is to ensure that all claims relating to the administration of estates are handled in the probate proceedings, thereby providing a single forum for settling the rights of the parties. [Citation.] In our opinion, it is consistent with these goals to allow plaintiffs to adjudicate their several claims and the relief they are seeking in one proceeding.
>
> ***
>
> *** It is our opinion, consistent with the procedural rules, that litigation of this nature should not be pled in separate complaints and plaintiffs should be allowed to proceed in the probate division on all counts in their complaint. ***

*** [T]he plaintiffs here allege that the defendants fraudulently induced the decedent to make certain *inter vivos* transfers of assets and that substantially all of the probate assets are outside of the estate. Therefore, even if plaintiffs should prevail in a will contest proceeding, it would not provide them with the relief they are seeking.

***

*** By allowing plaintiffs an opportunity during the probate proceedings to be heard and to present evidence regarding the tort actions, a further collateral attack on the probate decree in a later tort action in the law division would not be required. The trial court can hear all the evidence in one proceeding. We do not believe it is necessary for plaintiffs to exhaust their probate remedies before bringing an action in tort."

¶ 22 Therefore, it does not appear from the record and the parties' arguments that the will contest would have to entirely conclude, as Judith argues, before the circuit court could receive evidence or argument about the merits of the tort claims. Jacqueline and Kristen's tort claims are not "a second bite of the apple." *Robinson*, 97 Ill. 2d at 185. The tort claims do not implicate the public policy concerns discussed in *Robinson*, *Ellis*, and *Bjork* regarding the property rights created by a probated will and do not run afoul of the goals of efficient and timely administration of the estate.

¶ 23 It is undisputed that Jacqueline and Kristen filed their tort claims within the five-year general statute of limitations for actions to recover personal property or damages for its detention or conversion. See *Bjork*, 2013 IL 114044, ¶ 24 (citing 735 ILCS 5/13-205 (West 2008)).

¶ 24 Finally, Judith contends Jacqueline and Kristen lack standing to pursue the claims of tortious interference with inheritance expectancy "because they have no expectancy interest until [the 2012] will is set aside" and they become beneficiaries under Kazorow's prior estate planning

documents. Judith included this argument in her section 2-619 motion but the circuit court did not reach it. Judith now argues that lack of standing is reason for this court to stay the tort claims pending resolution of the will contest.

¶ 25    Lack of standing is an affirmative matter that is properly presented under section 2-619. *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999). The doctrine of standing limits who may sue and requires that a party have "some injury in fact to a legally cognizable interest." *Glisson*, 188 Ill. 2d at 221. Standing assures that issues are raised only by those parties with a real interest in the outcome of the controversy. *Glisson*, 188 Ill. 2d at 221. When addressing a standing argument, a court must accept as true all well-pled facts in the complaint and all inferences that can reasonably be drawn in the plaintiff's favor and grant the dismissal only if the plaintiff can prove no set of facts that would support a cause of action. *In re Estate of Schlenker*, 209 Ill. 2d 456, 461 (2004).

¶ 26    Judith erroneously relies on *DeHart*, 2013 IL 114137, ¶ 41, for the proposition that Jacqueline and Kristen's tort claims are premature so long as their will contest remains a viable cause of action. *DeHart*'s analysis is specific to the complaint at issue in that case in which the plaintiff pled multiple grounds for invalidating the will. See *DeHart*, 2013 IL 114137, ¶ 12. Our analysis above regarding the circuit court's ability to hear in one proceeding all the evidence relating to a will contest, tortious interference with inheritance expectancy, and the propriety of certain *inter vivos* transfers adequately addresses Judith's concern about Jacqueline and Kristen's standing to present their various claims together rather than separately. We are not directing the circuit court to hear the claims simultaneously, however. The circuit court is capable of managing a party's various causes of action and has discretion to efficiently control its docket. *Scentura*

*Creations, Inc. v. Long*, 325 Ill. App. 3d 62, 73 (2001) (circuit court has the discretion to manage its docket to ensure that there is no undue delay in the resolution of proceedings). We decline Judith's request to stay the tort claims until the will contest is resolved.

¶ 27 For the reasons stated, the judgment of the circuit court dismissing Jacqueline and Kristen's tort claims as untimely is reversed.

¶ 28 Reversed.

***In re Estate of Kazorow*, 2023 IL App (1st) 220938**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 2017-P-006063, 2019-L-12197; the Hon. Daniel O. Tiernan, Judge, presiding. |
| **Attorneys for Appellant:** | Edward S. Rueda, of ESR Law Group, LLC, of Oak Park, and George C. Pontikes, of George C. Pontikes & Associates, PC, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Ray J. Koenig III, Eric Dorkin, and Timothy Herman, of Clark Hill PLC, of Chicago, for appellee. |